925 F.2d 1479
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Marion W. COTLON, Petitioner,
v.
DEPARTMENT OF THE AIR FORCE, Respondent.
 No. 90-3388.
 United States Court of Appeals, Federal Circuit.
 Jan. 11, 1991.
 
 DECISION
 CLEVENGER, Circuit Judge.
 
 
 1
 Marion W. Cotlon ("Cotlon") appeals the final decision of the Merit Systems Protection Board ("Board") which reversed-in-part and affirmed-in-part the initial decision of the Administrative Judge ("AJ"), and reinstated the removal action taken against Cotlon by the Department of the Air Force ("agency"). Cotlon v. Dep't of the Air Force, No. DA07528910476, Opinion and Order (M.S.P.B. May 2, 1990) modifying Initial Decision (M.S.P.B. Oct. 26, 1989). The decision was based upon the Board's finding that the agency had proved three charges of obtaining "travel at government expense" "under the guise" that the travel was for dependents, Notice of Proposed Removal at 1 (April 20, 1989), and one charge of unauthorized issuance of a government transportation request ("travel voucher"). We reverse the decision sustaining the charges of guileful use of government services because the Board lacked substantial evidence of her intent to deceive, affirm the charge of improper issuance of a travel voucher, and remand for reconsideration of the penalty.
 
 OPINION
 
 2
 * Cotlon was the agency's Traffic Management Chief in the Philippines. After two years, she returned to the U.S. in August 1988. According to the agency, regulations governing travel vouchers for employee's dependents do not cover the individuals claimed by Cotlon. The agency alleged that Cotlon obtained the vouchers "under the guise" that the persons were covered although she knew or should have known that they were not. Letter from Captain Fox to Cotlon (Apr. 20, 1989) ("Notice of Proposed Removal"). Furthermore, the agency alleged that one voucher was issued for student travel, although the individual "did not enroll in the school that it had been asserted she would attend." Initial Decision at 3.
 
 
 3
 Two of the travel vouchers were for Tamiko Eadie, a financially-dependent minor to whom Cotlon bore no genetic or formalized legal relationship. One of Tamiko's vouchers was for return travel to the United States at the end of Cotlon's assignment and the other was the student travel voucher. The third travel voucher was for return travel for Cotlon's natural daughter, Tammelita Cotlon, who had married Catalino Galang, a Filipino, while in the Philippines. Notice of Proposed Removal. Neither of the return travel vouchers was used. Initial Decision at 4.
 
 
 4
 Before her departure from the Philippines, the agency began an investigation into her alleged "Theft of Government Services for Personal Gain through Manipulation of Military Airlift Command Transportation Authorizations and Government Transportation Requests and False Declaration of Dependents; [and] Issuing Government Transportation Requests to Unauthorized Persons." Report of Investigation by Sgt. Kemink, File No. 8842D4-93 (Sept. 27, 1988). During the initial investigation, Cotlon told the investigator that Tammelita's marriage was "not real" since Galang had engineered the marriage ceremony at his home as a scheme for him to emigrate to the U.S., and because her daughter had never cohabited with him. She stated that she had discussed this family problem with an agency legal officer who had told her that Tammelita was entitled to a return travel voucher. Id. at 3.
 
 
 5
 She also contested entitlement for Tamiko. For instance, she testified at the hearing that the agency should consider Tamiko her dependent because she "supported this child and she has been a member of my household, and I consider her as my daughter." Transcript of Hearing at 162. Cotlon contended that she believed that Tamiko was a dependent under the regulation.
 
 II
 
 6
 Rather than pursue the allegation of theft, the agency charged Cotlon with obtaining government services by creating the false impression, on documents, that the individuals were unquestionably entitled to the vouchers. The AJ, and the Board, in sustaining the three charges involving this guile, reached the conclusion that Cotlon "knew or should have known that she was not entitled to government paid travel for Tamiko," Initial Decision at 9, and that there was "circumstantial evidence of an intent to present a 'guise' to obtain transportation benefits." Opinion and Order at 8. We read the three charges, and the Board's treatment of them, to have required the government to prove an intent to deceive in order to sustain the charges. "As recognized by the presiding official, a charge of falsification of a government document requires proof not only that an answer was wrong, but also that the wrong answer was given with intent to deceive or mislead the agency." Naekel v. Dep't of Transportation, 782 F.2d 975, 978 (Fed.Cir.1986) (and cases cited therein).
 
 
 7
 The AJ, in the Initial Decision, sustained the two charges relating to Tamiko's travel vouchers. After finding that entitlement to the travel vouchers, under the regulations, required a genetic or formal legal relationship, the AJ stated:
 
 
 8
 [T]he record shows that the appellant listed Tamiko as her daughter on travel request documents related to government paid travel in these charges (and other documents as well), when, in fact, as the appellant knew, Tamiko was not her natural, adopted, or stepdaughter, nor was she the appellant's legal guardianship or ward.
 
 
 9
 Initial Decision at 9. In finding deceit, the AJ relied upon Cotlon's writing "D" or "DAU" on the form requesting civilian travel for Tamiko, under the narrow column labeled "Relationship." Both forms also list Tamiko's given last name. The form requesting a student travel voucher also states that the basis for the request is "Educational tvl of depn."
 
 
 10
 In reviewing the charge on the student travel voucher, the AJ found that, "notwithstanding the original intentions of the appellant, when the travel was not used for attending school, any entitlement that may have existed was extinguished." Id. at 9 (emphasis added). We read this to mean that the AJ found that Cotlon did not intend to deceive the agency when she obtained the voucher for educational travel.
 
 
 11
 The AJ did not sustain the charge relating to Tammelita's travel voucher because of ambiguity in the regulations. The regulations grant entitlement "at the time [the employee] reports for duty at his [or her] new permanent duty station" which would have been prior to Tammelita's marriage. Department of Defense Joint Travel Regulations, Appendix D, Civilian Personnel. The AJ noted, however, that in discussing events that might divest entitlement (divorce for a spouse or attaining the age of majority for a child), the regulations specifically state that entitlement to return travel is retained. In the absence of a specific statement on the effect of marriage of a dependent abroad, the AJ found the cited regulation to "offer some support for the appellant's contention that ... her return expenses were also allowed." Initial Decision at 6.
 
 
 12
 The Board reversed the AJ on Tammelita's travel voucher. The Board found:
 
 
 13
 We find that as a Traffic Manager, the appellant may be held to the knowledge that married children of employees stationed overseas are not entitled to travel at government expense.... Thus, the appellant should have known that she was not entitled to the benefit she claimed.
 
 
 14
 Opinion and Order at 7.
 
 
 15
 The Board found deceit because "appellant's use of her daughter's maiden name, Cotlon, on the pertinent documents, rather than her married name, ... and her actions in signing her own travel authorizations, contrary to regular procedures ... show that she did in fact intend [the agency] to infer that Tammelita was unmarried." Id. at 8.
 
 III
 
 16
 The Board's decision must be sustained unless it is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. Sec. 7703(c) (1988).
 
 
 17
 The Board required the agency to prove Cotlon's intent to deceive as an element of the charge that she obtained the travel vouchers "under the guise" of Tammelita and Tamiko being dependents. The requirement of proof of intent is not contested, and therefore conceded, by the agency. At oral argument, the agency continued to contend that Cotlon's actions taken in their entirety amply demonstrated intent to deceive. The Board's finding of deceit by Cotlon is based upon two factors: the completion of boxes in forms with allegedly misleading information (placing D or DAU for Tamiko, and using Tammelita's given surname rather than an allegedly adopted marital name) and that as a Traffic Manager she must have known that the regulations did not entitle her to the travel vouchers.
 
 
 18
 The Board's finding that she should have known the extent of entitlement under the regulation requires that the regulation be unambiguous. With regard to Tammelita's entitlement, the Board found that the regulation was clear and that "the appellant's opinion of the marriage and her degree of support for Tammelita are irrelevant to Tammelita's legal marital status and government entitlement." Opinion and Order at 7. We cannot agree that the regulation is so clear. The AJ's reading, or the alleged identical reading by an Air Force legal officer, is not untenable. The existence of this reasonable interpretation undermines the Board's finding that Cotlon should have known that she was obtaining a government service that was not lawfully hers. Furthermore, we cannot find the use of Tammelita's actual last name on the forms in question to be deceiving because the AJ found that "the marriage of her daughter was no secret" and "[t]here was no evidence adduced that the appellant tried to deceive anyone about Tammelita's marital status or that she had tried to return her daughter to the U.S. with her at government expense, knowing she was not entitled to do so." Initial Decision at 6. We do not find substantial evidence of deceit in the record as a whole to support the charge of obtaining government travel for Tammelita under guise.
 
 
 19
 The evidence supporting deceit with Tamiko's vouchers was Cotlon's falsification of the forms. However, Cotlon contended, and the agency does not dispute, that she never concealed the fact that Tamiko was not her real daughter, that this fact was well-known, that the use of "D" or "DAU" on the form was for lack of any other word to describe a person she considered as her daughter, and that she filed Tamiko's birth certificate along with the allegedly-falsified documents. Furthermore, she listed Tamiko's last name on the forms, claimed her as a dependent on the same forms, and filed Tamiko's passport with the same documents. These facts, taken together, do not provide substantial evidence of an intent to perpetrate a misappropriation under guise and therefore the charge of obtaining the return travel voucher or the student travel voucher for Tamiko "under the guise" that she was a dependent cannot be sustained. As noted supra, we read the Board's decision with regard to Tamiko's student travel voucher to have found that Cotlon lacked the intent to deceive as to the purpose of the travel because, although "the travel was not utilized for that purpose ... the appellant became aware of it shortly thereafter." Initial Decision at 9 (emphasis added). In other words, at the time that the student travel voucher was issued, and used, Cotlon intended that its use be for the purpose of studying.
 
 
 20
 After reviewing the record, we find substantial evidence in the record to support the decision of the Board sustaining the charge that Cotlon lacked authorization to issue the travel voucher to Ms. Wong. The charge contains no element of intent to deceive, as do the others. The charge, as we read it, is that a travel voucher was issued to a person who was technically not entitled under the regulations to that voucher, a fact which is not disputed. Cotlon's defenses that she had reason to believe that issuance of the voucher was permissible, or that she issued the voucher out of humanitarian reasons, are therefore unavailing.
 
 
 21
 The only charges before us are the four charges sustained by the Board. We reverse the Board's decision sustaining the three charges of deceit since the Board's conclusion that Cotlon intended to misappropriate government services is not supported by substantial evidence. We affirm the charge that Cotlon issued a travel voucher without authorization and remand to the Board for reconsideration of the appropriate penalty in light of the single sustained charge.
 
 IV
 
 22
 Costs to petitioner.